Case 4:24-cv-00217-O    Document 16    Filed 06/24/24    Page 1 of 9    PageID 76

Civil action No# 4:24-cv-217-O

Plaintiffs More definite Statement Inmate response

Justine M. Holland #73612-08

(A) I conveyed it to the witness who was another inmate Maribel Santana. I didn't go into full detail but she was aware that I had been raped by Officer Feeney She was in the weekly a Bible study group that I taught in. She wanted to report it and I told her no because I was scared after the officer Shane Feeney threatened me with what would happen if I reported it. Maribel did write a statement to OIG stating what was told to her. I also had bruised knuckles on my right hand from him dropping me and I had OT during this time Officer Williams asked me what happened to my hand and all I told her was I fell in the shower. Officer Shaney Feeney was not allowed to return to the prison after I reported it in April of 2023. He was also under investigation for bringing in contraband and I gave a sworn statement to OIG regarding what I saw him do. It was clear to many inmates and officers that Officer Feeney appeared to be under the influence of something in a regular basis. He was always very sweaty, he would cover his mouth when he spoke in the hallways and would tell the inmates that the cameras are watching him. That everyone there meaning staff had it out for him. There were other women who claimed he assaulted them as well but we're afraid to come forward after they saw what happened to me. Officer Feeney has within the last 6 months been dating a former inmate that the staff and inmates are aware of. She was at Carswell while he was an Officer. OIG told me that even if they felt like the AUSA couldn't prosecute him on the rape because it's hard for them, they would make sure they got him on administrative issues like contraband and other things to ensure he never comes back to Carswell.

(B) I was speaking to my husband on the phone and at that point I had not been sleeping well for months, I was scared all the time, and that day something triggered the event. While on the phone and I'm paraphrasing because it's been over a year but I told my husband that I needed out of that facility and he said I know we want you home to. I said no you don't get it I need out now. He immediately said did someone hurt you what happened and I brushed it off and said it was fine. We got off the phone and then I called him back because he emailed me very worried and finally after he pushed me I told him. I begged him not to tell anyone because I was scared and I was working on my transfer to Marianna Camp to be back in Florida near family. He immediately got off the phone with me and went on the BOP website and reported the rape on April 19, 2023. It was sent to Lt. Frontera in SIS/SIA that was at night. The next morning I was called downstairs and taken into a private room with Lt Frontera and a female officer from SIS they read me the email my husband sent and asked me to tell them what happened. I hesitated at first and said I just want to transfer out I don't want to do this. I agreed at first to tell them about the drugs and contraband he was bringing in. He asked me to go back to my room and just think about what happened but regardless of my willingness to tell he was going to report it. I was called back down that afternoon and this time it was Lt Frontera and Unit Manager Fleiner. I finally agreed to tell them after having spoken to my Mom on the phone who encouraged me to tell. After that Nurse Kay did my photo for the rape and asked me more questions. I also spoke to Dr. Feliciano who took my statement again and asked if I wanted therapy I told her yes. I also spoke to Lt Colonel Ortiz who was head of PREA at the time and told me she was available for anything I needed. I was advised that they reported it to OIG and I would be meeting with them soon. The following week April 26, 2023 OIG came and conducted an interview the main investigator was Jessica Wright out of the Dallas Federal OIG office.

(C) See response at (B)

(D) During the process of speaking to OIG I asked specifically if anyone would find out that I reported the officer. They said no, they would do everything in their power to make sure. Well they called down inmates and asked questions specific to me and Officer Feeney. Everyone quickly learned about what happened. Officer Shane Feeneys sister worked at the same facility Carswell. Once he was told not to return he had his Sister go around asking inmates if they knew who reported her brother. They told her it was me, then she started seeking me out giving me nasty looks, making derogatory comments under her breath. I later found out by our Chaplain that she was not supposed to have any contact with me whatsoever but clearly that didn't happen. I reported her comments to Captain Smith and through the SIS email link on our computers. Then there was another Officer Gilmore which you will see in my documents she made a false write up on me saying I was talking during count which I had witnesses who said I wasn't. When I approached her about it she told me this is what happens when you report an officer and then made it her mission to follow me and tell me what she thought. That incident report was thrown out, and that officer was then not allowed to work on any unit I was in. This incident is documented when I filed a 2241 with the same court last summer asking for the court to help make the BOP move me but the court said it's a civil suit not 2241. Officer Harris who was in charge of rec department was an officer filling in on our floor and her and her daughter called me to the office they said Holland go to R and D your going home. I said I am. They said no just kidding we just wanted to see what you looked like. I reported that to Captain Smith and to SIS email box. There were so many other officers who filled in on our units that would say ooo your holland okay I see why he would do that. Very derogatory nasty comments always reoorted to SIS email box and Captain Smith who always wanted said she would look into it and email SIS. Also, in my evidence you can see where I sent grievances to Region as a sensitive 10 and region responded with file at institution level. Why would I filed a complaint about officers harassing me at institution level? That is not how policy works. Anytime I would write someone up, I would be told to speak to one person, then they'd say no talk to this person, no one would ever help me or listen to my issues or concerns. I begged on several occasions to be placed in protective custody and told by Captain Smith that's to much paperwork. Let just see what happens. So, they would rather I get hurt again and then do something

JUN 24 2024 PM12:30
FILED-USDC-NDTX-FW

(2)
(A) As an inmate we have an option in our trulincs email system that says 'request to staff' inside that you can chose from departments and then there are two options one to 'SIS and one to DOJ sex reporting line which that one goes directly to OIG and the SIS box goes internally. It says in red letters that those emails sent will not show up for me in my sent box it is supposed to be a measure of security so that staff doesn't see that. If the court requests from the BOP all the emails sent to SIS and DOJ you will see it is many if not close to a hundred where I am reporting retaliation by staff and inmates, where I tell them I need help, I'm scared, I don't sleep, why haven't I been transferred yet like I was told. SIS box would've gone to Lt. Frontera as that was his department and I would address them normally to him. The inmate who threatened me on the video visit I had with my husband was in April of 2023. Not only did I report that to Lt Frontera and Captain Smith but my husband at the time emailed Lt Frontera and told him to listen to that video and you will hear me being threatened loud and clear by another inmate. I reported that inmate as well to the SIS and DOJ box. I emailed SIS from the time of my report in April 2023 until I was transferred to Marianna in March of 2024. As an inmate I have no access to those emails the BOP would need to supply your Honor with them. When I reported these things nothing was done, not a single thing, no one spoke to the inmates harassing me, or the staff, no one called me to their office like requested to discuss what was going on. When I would see them during lunch at mainline and inquire I was always told thank you for telling me I'll look into it and then nothing. No action was ever taken.
(B) Maribel Santana was my witness once others found out that she was also speaking against the office she took faced retaliation from being threatened with hot water to being beat up in the shower. She told Lt Frontera and Captain Smith what was going on and again they told her they would look into it. She took sent emails to SIS that never got answered or called down to speak on. When I left in March of 2024 she was still at Carswell and still being harassed like I had been.
(C) 42 USC 15607 states "Provides additional guidance concerning the separation of an inmate alleging to be victims and alleged perpetrator. Victims of sexually abusive behavior receive prompt and effective response to their physical, psychological, and security needs. The perpetrators of sexually abusive behavior will be disciplined and when appropriate prosecuted in accordance with bureau policy and federal law. Providing security to any inmate who alleged that he/she is the victim of sexually abusive behavior and where appropriate to inmates who reported to be victims of sexually abusive behavior. " This first part is an add on to PREA which I will include the policies below and you will see combined with the policies and this that they failed me.
28 CFR 115.5 is the start of DOJ Prison Rape Elimination Act this first part explains why they created it and their purpose which is similar to the above description
28 CFR 115.53 "Inmate access to outside confidential support services" Their policy clearly states that I am allowed to get therapy or seek mental health support from an agency outside of the BOP to protect what happened to me and make me feel secure in my therapy. If you combine this with 28 CFR 115.82 "Access to emergency medical and mental health services" you will see that it took them from April of 2023 to the end of August of 2023 to finally set up therapy with the Women's Rape Crisis Center of Tarrant County, the courts may request these documents from them to show the timeline. This is not access to emergency mental health treatment. I requested from Dr. feliciano, Lt Frontera, and Captain Smith to speak to them as soon as I reported it. I again emailed Dr. feliciano in May which the court has a copy of my request wanting to know how much longer it would be. It wasn't until the middle of May when Dr. feliciano was on our floor that I asked her what was going on did she tell me it would take 4-6 months to speak to anyone. I told her that wasn't good enough I needed help and asked if I could even speak to anyone at the facility she said she would put me on a waiting list. I filed 8.5 on this begging for help, I sent emails to Dr Feliciano Lt Frontera Captain Smith and spoke to the warden in mainline. Again, no staff help and no outside help until August. As far as the staff help goes Dr Feliciano asked Ms. Morse to meet with me weekly I was on the call out starting in August BOP records will show that not one time did I actually speak to Ms. Morse she cancelled on me every single week for over a month. I told Dr. Feliciano about this in mainline and her answer was staff gets busy there's 1300 women and very few psychologist. I went to psychology after officer Gilmore wrote me that shot that was thrown out about to have a nervous breakdown. I spoke to Ms Caldwell who was triage psychologist that day and she is the one that told me not to worry this is only a moment in time and did nothing to help my mental state. Had I been someone who would've ever considered suicide this would've made me do it. I am a god fearing women and love my son so I would never consider suicide for those reasons but regardless a victim should not have to beg for help and be turned down. The outside services are supposed to be private. However, when I finally had my sessions I sat I a room with a computer up against a mirror like they use at the police department and the people on the other side can see and hear me the room on the other side of that window was the staff lounge in psychology and my sessions were during lunch time so anyone in that room could hear and see me. That is not confidential services I made the therapist I spoke to aware of this as well. They only allowed me a total of 6 sessions with that therapist and in the almost year I had reported it that was the only mental health treatment I was given and again not confidentially. Which then goes into breaking 28 CFR 115.83 "on going medical healthcare for sexual abuse victims and abusers" there is nothing on going about any help I received even though I asked for it from the time I reported until the time I left.
28 CFR 115.67 "agency protection against retaliation" (a) the agency shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation. (C) items the agency should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments or staff. The agency shall continue such monitoring beyond 99 days I'd the initial monitoring indicates continuing needs. (e) If any other individual who cooperates with an investigation express fear of retaliation, the agency shall take appropriate measures to protect that individual against retaliation. (F) an agency obligation to monitor shall terminate if the agency determines that the allegation is unfounded. I filed several grievances to Region, to Captain Smith, to Lt Frontera, to the warden about what I was facing I reported to SIS and DOJ and no help. The officer who gave me the false shot that was thrown out was clearly retaliating that happened within 90 days of my report and nothing.
(D) refer to 2 (a) and (c)
(E) The rape itself was torture and a clear violation. The retaliation by staff and inmates, not being able to sleep at night, being scared everyday there that someone else was going to harm me and no one doing anything to help. Every previous response states in more detail this every single person in the suit caused this to me by either taking part in the assault or doing nothing to stop the retaliation or getting me mental health care I desperately needed.
(3) the warden knew the retaliation I faced I told him on a regular basis in main line at lunch during the week. Yet he never did anything to assist other than tell me to email SIS who did nothing. He is in charge of that prison it is his duty and obligation to protect the prisoners against what I went through and then to know what was happening after and do nothing about it was awful.

(4) Captain Smith was my go to for the entire investigation because SIS was often unavailable to help, I told her on a regular basis of the retaliation she did nothing. I asked to be out into PC before a housing unit move and she told me that it was to much paperwork and should something happen to let her know and they would handle it. She knew that officer retaliated against me and that I lost my phone on grounds I shouldn't have but did nothing to help me so I was deprived of my right to the phone over a false report by her officer. She is head of security at carswell my safety should've been her number one priority and it wasn't.

(5) He did not protect the report and allowed my name to be spoken to others during investigation. That then opened the door to the retaliation I faced. I told him about the video visits my husband emailed him to tell him to listen and do something about it but he did not never responded never helped me with it. His inability to handle the case in a professional manner and stay in touch with me, check on me as PREA policy states again he did not. Having to constantly worry that no one will help is serious mental anguish being afraid for my life and the person in charge of the investigation doing nothing.

(6) Refer to 2C for PREA policies which clearly show in due the right to therapy. I asked for therapy at the time than again may beginning in an email only to be told 4-6 months then promised inside therapy only for every session to be cancelled. Reporting to her in mainline that she bailed at every meeting and doing nothing about it.

(7) Courts have ruled that the eighth amendment's prohibition against cruel and unusual punishment encompasses an inmate's right to be protected by prison authorities from the reasonable threat as well as the fact of sexual assault and to receive medical care, including psychological services, should such an assault occur.

Civil Rights Claim, 42 U.S.C. § 1983
· Violation of Constitutional rights by a person acting "under color of" state-level or local law

Eighth Amendment
· "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
· Government's deliberate indifference to sexual abuse of incarcerated person is cruel and unusual punishment.

First Amendment
· "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
· Retaliation for reporting abuse violates free speech rights.

Fourteenth Amendment
· "... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
· Lack of due process in deprivation of rights.

(8) Shane Feeney raped me therefore I seek relief from everything monetarily, mental anguish, violation of my constitutional rights, bodily harm.

Captain Smith, Warden Rule and Lt Frontera violated my constitutional rights by not stopping the retaliation and protecting me even when it was brought to their attention what was happening. Dr. Feliciano for not providing adequate therapy and mental health treatment and violating my constitutional rights as listed above. Every single person named in my suit directly violated my civil rights and therefore should all be included in the suit

(9) No other defendant caused me physical harm. (A) None

"I declare under penalty of perjury that all answers and assertions in this note definite statement are true and correct"

(9) No other defendant caused me physical harm. (A) None

"I declare under penalty of perjury that all answers and assertions in this note definite statement are true and correct"

Respectfully,

Justina Holland
73612018
FCI Camp Marianna

Civic Action #
4:24-cv-217-0

(A) I conveyed it to the witness who was another inmate Maribel Santana. I didn't go into full detail but she was aware that I had been raped by Officer Feeney She was in the weekly a Bible study group that I taught in. She wanted to report it and I told her no because I was scared after the officer Shane Feeney threatened me with what would happen if I reported it. Maribel did write a statement to OIG stating what was told to her. I also had bruised knuckles on my right hand from him dropping me and I had OT during this time Officer Williams asked me what happened to my hand and all I told her was I fell in the shower. Officer Shaney Feeney was not allowed to return to the prison after I reported it in April of 2023. He was also under investigation for bringing in contraband and I gave a sworn statement to OIG regarding what I saw him do. It was clear to many inmates and officers that Officer Feeney appeared to be under the influence of something in a regular basis. He was always very sweaty, he would cover his mouth when he spoke in the hallways and would tell the inmates that the cameras are watching him. That everyone there meaning staff had it out for him. There were other women who claimed he assaulted them as well but we're afraid to come forward after they saw what happened to me. Officer Feeney has within the last 6 months been dating a former inmate that the staff and inmates are aware of. She was at Carswell while he was an Officer. OIG told me that even if they felt like the AUSA couldn't prosecute him on the rape because it's hard for them, they would make sure they got him on administrative issues like contraband and other things to ensure he never comes back to Carswell.

(B) I was speaking to my husband on the phone and at that point I had not been sleeping well for months, I was scared all the time, and that day something triggered the event. While on the phone and I'm paraphrasing because it's been over a year but I told my husband that I needed out of that facility and he said I know we want you home to. I said no you don't get it I need out now. He immediately said did someone hurt you what happened and I brushed it off and said it was fine. We got off the phone and then I called him back because he emailed me very worried and finally after he pushed me I told him. I begged him not to tell anyone because I was scared and I was working on my transfer to Marianna Camp to be back in Florida near family. He immediately got off the phone with me and went on the BOP website and reported the rape on April 19, 2023. It was sent to Lt. Frontera in SIS/SIA that was at night. The next morning I was called downstairs and taken into a private room with Lt Frontera and a female officer from SIS they read me the email my husband sent and asked me to tell them what happened. I hesitated at first and said I just want to transfer out I don't want to do this. I agreed at first to tell them about the drugs and contraband he was bringing in. He asked me to go back to my room and just think about what happened but regardless of my willingness to tell he was going to report it. I was called back down that afternoon and this time it was Lt Frontera and Unit Manager Fleiner. I finally agreed to tell them after having spoken to my Mom on the phone who encouraged me to tell. After that Nurse Kay did my photo for the rape and asked me more questions. I also spoke to Dr. Feliciano who took my statement again and asked if I wanted therapy I told her yes. I also spoke to Lt Colonel Ortiz who was head of PREA at the time and told me she was available for anything I needed. I was advised that they reported it to OIG and I would be meeting with them soon. The following week April 26, 2023 OIG came and conducted an interview the main investigator was Jessica Wright out of the Dallas Federal OIG office.

(C) See response at (B)

(D) During the process of speaking to OIG I asked specifically if anyone would find out that I reported the officer. They said no, they would do everything in their power to make sure. Well they called down inmates and asked questions specific to me and Officer Feeney. Everyone quickly learned about what happened. Officer Shane Feeneys sister worked at the same facility Carswell. Once he was told not to return he had his Sister go around asking inmates if they knew who reported her brother. They told her it was me, then she started seeking me out giving me nasty looks, making derogatory comments under her breath. I later found out by our Chaplain that she was not supposed to have any contact with me whatsoever but clearly that didn't happen. I reported her comments to Captain Smith and through the SIS email link on our computers. Then there was another Officer Gilmore which you will see in my documents she made a false write up on me saying I was talking during count which I had witnesses who said I wasn't. When I approached her about it she told me this is what happens when you report an officer and then made it her mission to follow me and tell me what she thought. That incident report was thrown out, and that officer was then not allowed to work on any unit I was in. This incident is documented when I filed a 2241 with the same court last summer asking for the court to help make the BOP move me but the court said it's a civil suit not 2241. Officer Harris who was in charge of rec department was an officer filling in on our floor and her and her daughter called me to the office they said Holland go to R and D your going home, I said I am. They said no just kidding we just wanted to see what you looked like. I reported that to Captain Smith and to SIS email box. There were so many other officers who filled in on our units that would say ooo your holland okay I see why he would do that. Very derogatory nasty comments always reoorted to SIS email box and Captain Smith who always wanted said she would look into it and email SIS. Also, in my evidence you can see where I sent grievances to Region as a sensitive 10 and region responded with file at institution level. Why would I filed a complaint about officers harassing me at institution level? That is not how policy works. Anytime I would write someone up, I would be told to speak to one person, then they'd say no talk to this person, no one would ever help me or listen to my issues or concerns. I begged on several occasions to be placed in protective custody and told by Captain Smith that's to much paperwork. Let just see what happens. So, they would rather I get hurt again and then do something

(2)

(A) As an inmate we have an option in our trulines email system that says 'request to staff' inside that you can chose from departments and then there are two options one to 'SIS' and one to DOJ sex reporting line which that one goes directly to OIG and the SIS box goes internally. It says in red letters that those emails sent will not show up for me in my sent box it is supposed to be a measure of security so that staff doesn't see that. If the court requests from the BOP all the emails sent to SIS and DOJ you will see it is many if not close to a hundred where I am reporting retaliation by staff and inmates, where I tell them I need help, I'm scared, I don't sleep, why haven't I been transferred yet like I was told. SIS box would've gone to Lt. Frontera as that was his department and I would address them normally to him. The inmate who threatened me on the video visit I had with my husband was in April of 2023. Not only did I report that to Lt Frontera and Captain Smith but my husband at the time emailed Lt Frontera and told him to listen to that video and you will hear me being threatened loud and clear by another inmate. I reported that inmate as well to the SIS and DOJ box. I emailed SIS from the time of my report in April 2023 until I was transferred to Marianna in March of 2024. As an inmate I have no access to those emails the BOP would need to supply your Honor with them. When I reported these things nothing was done, not a single thing, no one spoke to the inmates harassing me, or the staff, no one called me to their office like requested to discuss what was going on. When I would see them during lunch at mainline and inquire I was always told thank you for telling me I'll look into it and then nothing. No action was ever taken.

(B) Maribel Santana was my witness once others found out that she was also speaking against the office she took faced retaliation from being threatened with hot water to being beat up in the shower. She told Lt Frontera and Captain Smith what was going on and again they told her they would look into it. She took sent emails to SIS that never got answered or called down to speak on. When I left in March of 2024 she was still at Carswell and still being harassed like I had been.

(C) 42 USC 15607 states "Provides additional guidance concerning the separation of an inmate alleging to be victims and alleged perpetrator. Victims of sexually abusive behavior receive prompt and effective response to their physical, psychological, and security needs. The perpetrators of sexually abusive behavior will be disciplined and when appropriate prosecuted in accordance with bureau policy and federal law. Providing security to any inmate who alleged that he/she is the victim of sexually abusive behavior and where appropriate to inmates who reported to be victims of sexually abusive behavior. " This first part is an add on to PREA which I will include the policies below and you will see combined with the policies and this that they failed me.

28 CFR 115.5 is the start of DOJ Prison Rape Elimination Act this first part explains why they created it and their purpose which is similar to the above description

28 CFR 115.53 "Inmate access to outside confidential support services" Their policy clearly states that I am allowed to get therapy or seek mental health support from an agency outside of the BOP to protect what happened to me and make me feel secure in my therapy. If you combine this with 28 CFR 115.82 "Access to emergency medical and mental health services" you will see that it took them from April of 2023 to the end of August of 2023 to finally set up therapy with the Women's Rape Crisis Center of Tarrant County, the courts may request these documents from them to show the timeline. This is not access to emergency mental health treatment. I requested from Dr. feliciano, Lt Frontera, and Captain Smith to speak to them as soon as I reported it. I again emailed Dr. feliciano in May which the court has a copy of my request wanting to know how much longer it would be. It wasn't until the middle of May when Dr. feliciano was on our floor that I asked her what was going on did she tell me it would take 4-6 months to speak to anyone. I told her that wasn't good enough I needed help and asked if I could even speak to anyone at the facility she said she would put me on a waiting list. I filed 8.5 on this begging for help, I sent emails to Dr Feliciano Lt Frontera Captain Smith and spoke to the warden in mainline. Again, no staff help and no outside help until August. As far as the staff help goes Dr Feliciano asked Ms. Morse to meet with me weekly I was on the call out starting in August BOP records will show that not one time did I actually speak to Ms. Morse she cancelled on me every single week for over a month. I told Dr. Feliciano about this in mainline and her answer was staff gets busy there's 1300 women and very few psychologist. I went to psychology after officer Gilmore wrote me that shot that was thrown out about to have a nervous breakdown. I spoke to Ms Caldwell who was triage psychologist that day and she is the one that told me not to worry this is only a moment in time and did nothing to help my mental state. Had I been someone who would've ever considered suicide this would've made me do it. I am a god fearing women and love my son so I would never consider suicide for those reasons but regardless a victim should not have to beg for help and be turned down. The outside services are supposed to be private. However, when I finally had my sessions I sat I a room with a computer up against a mirror like they use at the police department and the people on the other side can see and hear me the room on the other side of that window was the staff lounge in psychology and my sessions were during lunch time so anyone in that room could hear and see me. That is not confidential services I made the therapist I spoke to aware of this as well. They only allowed me a total of 6 sessions with that therapist and in the almost year I had reported it that was the only mental health treatment I was given and again not confidentially. Which then goes into breaking 28 CFR 115.83 "on going medical healthcare for sexual abuse victims and abusers" there is nothing on going about any help I received even though I asked for it from the time I reported until the time I left.

28 CFR 115.67 "agency protection against retaliation" (a) the agency shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation. (C) items the agency should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments or staff. The agency shall continue such monitoring beyond 99 days I'd the initial monitoring indicates continuing needs. (e) If any other individual who cooperates with an investigation express fear of retaliation, the agency shall take appropriate measures to protect that individual against retaliation. (F) an agency obligation to monitor shall terminate if the agency determines that the allegation is unfounded. I filed several grievances to Region, to Captain Smith, to Lt Frontera, to the warden about what I was facing I reported to SIS and DOJ and no help. The officer who gave me the false shot that was thrown out was clearly retaliating that happened within 90 days of my report and nothing.

(D) refer to 2 (a) and (c)

(E) The rape itself was torture and a clear violation. The retaliation by staff and inmates, not being able to sleep at night, being scared everyday there that someone else was going to harm me and no one doing anything to help. Every previous response states in more detail this every single person in the suit caused this to me by either taking part in the assault or doing nothing to stop the retaliation or getting me mental health care I desperately needed.

(3) the warden knew the retaliation I faced I told him on a regular basis in main line at lunch during the week. Yet he never did anything to assist other than tell me to email SIS who did nothing. He is in charge of that prison it is his duty and obligation to protect the prisoners against what I went through and then to know what was happening after and do nothing about it was awful.

(4) Captain Smith was my go to for the entire investigation because SIS was often unavailable to help, I told her on a regular basis of the retaliation she did nothing, I asked to be out into PC before a housing unit move and she told me that it was to much paperwork and should something happen to let her know and they would handle it. She knew that officer retaliated against me and that I lost my phone on grounds I shouldn't have but did nothing to help me so I was deprived of my right to the phone over a false report by her officer. She is head of security at carswell my safety should've been her number one priority and it wasn't.

(5) He did not protect the report and allowed my name to be spoken to others during investigation. That then opened the door to the retaliation I faced. I told him about the video visits my husband emailed him to tell him to listen and do something about it but he did not never responded never helped me with it. His inability to handle the case in a professional manner and stay in touch with me, check on me as PREA policy states again he did not. Having to constantly worry that no one will help is serious mental anguish being afraid for my life and the person in charge of the investigation doing nothing.

(6) Refer to 2C for PREA policies which clearly show in due the right to therapy. I asked for therapy at the time than again may beginning in an email only to be told 4-6 months then promised inside therapy only for every session to be cancelled. Reporting to her in mainline that she bailed at every meeting and doing nothing about it.

(7) Courts have ruled that the eighth amendment's prohibition against cruel and unusual punishment encompasses an inmate's right to be protected by prison authorities from the reasonable threat as well as the fact of sexual assault and to receive medical care, including psychological services, should such an assault occur.

Civil Rights Claim, 42 U.S.C. § 1983
· Violation of Constitutional rights by a person acting "under color of" state-level or local law

Eighth Amendment
· "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."
· Government's deliberate indifference to sexual abuse of incarcerated person is cruel and unusual punishment.

First Amendment
· "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
· Retaliation for reporting abuse violates free speech rights.

Fourteenth Amendment
· "... No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
· Lack of due process in deprivation of rights.

(8) Shane Feeney raped me therefore I seek relief from everything monetarily, mental anguish, violation of my constitutional rights, bodily harm. Captain Smith, Warden Rule and Lt Frontera violated my constitutional rights by not stopping the retaliation and protecting me even when it was brought to their attention what was happening. Dr. Feliciano for not providing adequate therapy and mental health treatment and violating my constitutional rights as listed above. Every single person named in my suit directly violated my civil rights and therefore should all be included in the suit

(9) No other defendant caused me physical harm. (A) None

"I declare under penalty of perjury that all answers and assertions in this note definite statement are true and correct"

(9) No other defendant caused me physical harm. (A) None

"I declare under penalty of perjury that all answers and assertions in this note definite statement are true and correct"

Respectfully,

Justina Holland
73612018
FCI Camp Marianna

Civil Action
# 4:24-CV-217-O

FROM:

Justina M Holland
# 73612-018
FCI Marianna Satellite Camp
for women
PO Box 7001
Marianna, Fl 32447

United States district court
Office of the Clerk
Northern District of Texas
501 West tenth St
Room 310
Fort Worth, TX 76102

Retail
U.S. POSTAGE PAID
FCM LG ENV
OVIEDO, FL 32765
JUN 16, 2024
RDC 99    76102    $2.11
R2305K137286-08

Utility Mailer
10 1/2" x 16"

Ready Post.